```
              UNITED STATES DISTRICT COURT
               SOUTHERN DISTRICT OF OHIO
                    WESTERN DIVISION
```

**CIVIL ACTION NO. 1:14cv0784 (WOB)**

**JEFF STURGILL, ET AL.**                               **PLAINTIFFS**

**VS.**                    MEMORANDUM OPINION AND ORDER

**BEACH AT MASON LIMITED**
**PARTNERSHIP, ET AL.**                                 **DEFENDANTS**


This matter is before the Court on the parties cross motions for summary judgment (Docs. 14, 15). The Court has reviewed this matter and concludes that oral argument is unnecessary. It therefore issues the following Memorandum Opinion and Order.

*Factual and Procedural Background*

**A. Procedural Background**

On August 28, 2011, Plaintiffs Jeff and Sandy Sturgill were injured while patrons at The Beach Waterpark in Mason, Ohio.

In 2012, the Beach entities filed for bankruptcy protection in the Southern District of Ohio. On July 1, 2013, the bankruptcy court granted the Sturgills relief from the automatic stay to pursue whatever insurance proceeds might be available to The Beach, noting that their recovery would be limited to any such proceeds.

On August 21, 2013, the Sturgills filed a personal injury action against The Beach and its corporate owners in the Court of Common Pleas for Warren County, Ohio.  The Beach entities defaulted.  On July 3, 2014, the state court entered final judgments in the Sturgills' favor in the amounts of $224,282.48 (Sandy Sturgill) and $36,462.19 (Jeff Sturgill).[1]

On August 29, 2014, the Sturgills filed a "Supplemental Complaint" in the state court personal injury action, adding Steadfast and Zurich as defendants and asserting a right to the proceeds of the policy issued to The Beach.  (Case. No. 1:14cv784, Doc. 1-1 at 10-13).  Steadfast and Zurich then timely removed the action to this Court.[2]

B. **The Steadfast Insurance Policy**

Defendant Steadfast Insurance Company ("Steadfast") issued a Commercial General Liability Policy ("the Policy") to The Beach Waterpark, effective October 1, 2010 to October 1, 2011.  (Doc. 14-1).

---

[1] There was a separate declaratory judgment action filed in state court which was also removed to this Court, but plaintiffs have voluntarily dismissed that action.  (Doc. 11).

[2] It is not disputed that it was Steadfast, rather than Zurich, that issued the insurance policy in question.  The Court will thus dismiss Zurich as a party.

The policy includes a "Self Insured Retention Endorsement" with a $10,000 per claim SIR.  (Doc. 14-1 at PAGEID #210).  This endorsement states:

**SCHEDULE**

**SELF INSURED RETENTION AMOUNTS**

$10,000 **Per** Claim

\* \* \*

I. **Self Insured Retention And Defense Costs – Your Obligations**

   A. The "self insured retention" amounts stated in the Schedule of this endorsement apply as follows:

\* \* \*

      2.      If a Per Claim "self insured retention" amount is shown in the Schedule of this endorsement, it is a condition precedent to our liability that you make actual payment of all "damages" and "defense costs" for each claim until you have paid "self insured retention" amounts and "defense costs" equal to the Per Claim amount shown in the Schedule . . . . **Payments by others, including but not limited to additional insureds or insurers, do not serve to satisfy the "self insured retention." Satisfaction of the "self insured retention" as a condition precedent to our liability applies regardless of insolvency or bankruptcy by you[.]**  The Per Claim amount is the most you will pay for "self insured retention" amounts and "defense costs" sustained by any one person or organization as a result of any one "occurrence" or offense.

\* \* \*

3

> IV. **Definitions**
>
> A. "Self insured retention" means:
> the amount or amounts which you must pay for all "damages" which you shall become legally obligated to pay because of "bodily injury", "property damage", "advertising injury", "personal injury", medical payments or any other such coverage included in the policy, sustained by one or more persons of organizations.

(Doc. 14-1 at PAGEID ##210-11, 213) (emphasis added).

It is not disputed that The Beach has not paid the $10,000 per claim SIR for the Sturgills' judgments.

The Policy also contains a "bankruptcy clause" under the heading "Commercial General Liability Conditions":

> 1. **Bankruptcy**
> "Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under the policy."

(Doc. 14-1 at PAGEID #199).

## *Analysis*

The present motions present the following question of law: does the fact that The Beach has not paid the $10,000 per claim deductible for the Sturgills' judgments relieve Steadfast of its coverage obligations under the Policy? After a thorough review of the law, the Court concludes that the answer to this question is no. However, Steadfast is not obligated to pay the first $20,000 of the judgment amounts.

There appears to be no case law in Ohio directly on point on the question of whether an insured's failure to pay a SIR due to bankruptcy relieves its insurer of providing coverage for claims that are otherwise within the policy's coverage.

However, the great weight of authority from other jurisdictions holds, under policy language similar to that contained in the Steadfast policy, that the insured's failure to pay a SIR does *not* relieve the insurer of its contractual duties under the policy. *See Pinnacle Pines Cmty. Ass'n v. Everest Nat'l Ins. Co.*, No. CV-12-08202-PCT-DGC, 2014 WL 1875166, at *5 (D. Ariz. May 9, 2014) (holding that, due to policy clause stating that the insolvency of the insured would not relieve the insurer of its insurance obligation, the insured's bankruptcy and resulting inability to pay SIR did not absolve insurer from its responsibility to provide coverage for judgment obtained against insured by third party); *In re FF Acquisition Corp.*, 422 B.R. 64, 67 (N.D. Miss. 2009) (debtor's failure to fund its SIR did not relieve insurer of its duty under policy to provide defense in personal injury action pending against debtor); *In re Grace Ind., Inc.*, 341 B.R. 399, 403-04 (E.D.N.Y. 2006) ("[T]he debtor's failure to pay the retrospective premium claimed to be due, or failure to fund the costs of, or any awards resulting from, these personal injury actions to the extent to the self-

5

insured retention amount, does not relieve Admiral of its obligation to pay claims under the Policy."), *aff'd as modified*, *Admiral Ins. Co. v. Grace*, 409 B.R. 275 (2009); *In re: Vanderveer Estates Holding, LLC*, 328 B.R. 18, 25-26 (E.D.N.Y. 2005) (bankruptcy debtor's failure to pay SIR under policy did not relieve insurer of its obligations under policy); *In re OES Envtl., Inc.*, 319 B.R. 266, 269 (M.D. Fla. Aug. 3, 2004) (holding that insurer "is obligated to defend and indemnify the Debtor for the portion of any judgment or settlement exceeding [the SIR], irrespective of Debtor's inability to pay the claimed retention amount"); *In re Keck, Mahin & Cate*, 241 B.R. 583, 596-97 (N.D. Ill. 1999) (insurer obligated to provide coverage even though bankrupt insured could not make actual payment of SIR; however, insurer would not be liable for any part of the SIR); *In re Firearms Import and Export Corp.*, 131 B.R. 1009, 1014 (S.D. Fla. 1991) (failure of insured to fund SIR does not relieve insurer of coverage obligation; insured paid all premiums and insurance contract was thus not executory); *In the Matter of Federal Press Co., Inc.*, 104 B.R. 56, 62 -64 (N.D. Ind. 1989) (holding that SIR clause and bankruptcy clause conflicted and created ambiguity such that policy would be construed in favor of insured, and its inability to satisfy SIR due to bankruptcy would not relieve insurer of coverage

6

obligation); *Gulf Underwriters Ins. Co. v. McClain Indus., Inc.*, Docket No. 273768, 2008 WL 3021134, at *2-*3 (Mich. Ct. App. Aug. 5, 2008) (holding that requiring bankrupt insured to fund SIR before insurer's coverage obligation would be triggered would nullify bankruptcy clause); *Home Ins. Co. of Illinois v. Hooper*, 294 Ill. App.3d 626, 632-33 (Ill. Ct. App. 1998) (requiring payment of SIR by bankrupt insured as condition precedent violates Illinois public policy arising from statute requiring bankruptcy clause in liability policies).[3]

As the Court in *In re Grace Ind., Inc.*, 341 B.R. 399 (E.D.N.Y. 2006), explained:

> Admiral's declaratory judgment action is premised on the notion that Admiral has no obligation to provide any coverage unless and until the debtor performs all of its obligations under the Policy. This is an incorrect premise. Where, as in this case, an insured debtor has paid the initial premium in full, and the policy period has expired, the insurance policy is not an executory contract, despite continuing obligations on the part of the insured. In that event, the insured's failure to perform those continuing obligations does not excuse the insurer from being required to perform, but gives rise to an unsecured claim by the insurer for any damages incurred by reason of the debtor's breach of the policy. Put differently, courts interpreting Section 365 of the

---

[3] Steadfast has cited to only one case that holds to the contrary. *See Pak-Mor Mfg. Co. v. Royal Surplus Lines Ins. Co.*, No. SA-05-CA-135-RF, 2005 WL 3487723 (W.D. Texas Nov. 3, 2005) (holding that insurer has no obligation to provide coverage until insured pays SIR).

Bankruptcy Code[4] have made it clear that, for the purposes of that provision, the debtor's payment of the initial policy premium constitutes substantial compliance with its contractual obligations.

. . .

This is so whether the continuing obligation of the bankrupt insured is the payment of a retrospective premium or the payment of defense or other costs within a deductible or a self-insured retention.

. . .

To hold otherwise would permit an insurer to avoid its obligations under the insurance policy by reason of the insured's bankruptcy, a result which is at odds with the [bankruptcy clause in] the Policy and with applicable New York law. . . . Implicit in this agreement is the understanding that failure to pay retrospective premiums due to the plaintiff's bankruptcy would not excuse defendant from paying claims arising from occurrences during the pre-petition policy coverage period.

. . .

Admiral will not be required to pay the first $50,000 of any costs or recovery on a claim covered by the Policy. **Its obligations will be exactly what they would be in the absence of Grace's bankruptcy — to pay claims to the extent of the policy limits, and to the extent the claims exceed the amount of the self-insured retention.**

*Id.* at 402-04 (emphasis added).

---

[4] Section 365 of the Bankruptcy Code allows a trustee to assume or reject certain executory contracts or unexpired leases of the debtor. *See* 11 U.S.C. § 365. The issue of whether an insurer can refuse to provide coverage on the grounds that the bankrupt insured has not paid a SIR is often litigated in the bankruptcy context where the insurer argues that the policy is an executory contract.

In *In the Matter of Federal Press Co., Inc.*, 104 B.R. 56 (N.D. Ind. 1989), the Court reached the same result under the reasoning that the SIR "condition precedent" clause and the bankruptcy clause were in conflict, creating an ambiguity:

> In this case the dispute between the parties arises not from an ambiguity in the language used in the policies but from two provisions which seem to contradict one another thereby creating an ambiguity in the policies' meaning. The provision requiring that Federal Press comply with all the terms of the policies as a condition precedent to Columbia's liability apparently conflicts with the provision stating that Federal Press' bankruptcy or insolvency shall not relieve Columbia of any of its obligations under the policies. In resolving this conflict, the court construes the provisions in favor of Federal Press and interprets the policies to further the policies' purpose of indemnity. The court thus concludes that Federal Press and Columbia intended for Federal Press to fulfill all of its obligations under the policies as a condition precedent to Columbia's liability but for its inability to do so because of bankruptcy or insolvency. The court further concludes that Federal Press' possible inability to satisfy its retained limit of $300,000 due to its bankruptcy or insolvency does not relive Columbia of its obligation to indemnify Federal Press. The court believes this result is consistent with Indiana law and the equities of this case.

*Id.* at 62.

While Steadfast correctly notes that some of these decisions are based on public policy rationales arising out of state statutes that require the inclusion of the "bankruptcy" clause in applicable insurance policies – which Ohio does not have – the reasoning in many of these cases does not depend on

9

such statutes. In fact, the Court in *Vanderveer Estates* expressly stated that its ruling would be the same even in the absence of the Illinois bankruptcy clause statute:

> ASIC has not identified any case that supports its assertion that an excess insurer need not indemnify a bankrupt debtor that fails to pay defense costs pursuant to a SIR endorsement. **To the contrary, case law interpreting § 365 of the Bankruptcy Code makes it clear that even in the absence of an applicable statutory provision such as [The Illinois Insurance Code, Chapter 215,] § 5/388, the failure of a bankrupt insured to fund a self-insured retention does not relieve the insurer of the obligation to pay claims under the policy.**

*In re: Vanderveer Estates Holding, LLC*, 328 B.R. 18, 25 (E.D.N.Y. 2005) (emphasis added).

Moreover, while Ohio does not have a statute requiring liability policies to contain a bankruptcy clause, the fact remains that the Steadfast policy *does* contain such a clause. As recognized in the above authority, to adopt Steadfast's position would nullify that provision. *See, e.g., Pinnacle Pines Cmty. Ass'n v. Everest Nat'l Ins. Co.*, No. CV-12-08202-PCT-DGC, 2014 WL 1875166, at *5 (D. Ariz. May 9, 2014) ("Such a reading would mean that Everest can escape liability under the policy if the insured is unable to pay the SIR due to bankruptcy, a result clearly inconsistent with the first sentence of the bankruptcy provision.").

Further, this result is supported by an Ohio case which, while not directly on point, is highly analogous to the situation here. *See In re Sudbury, Inc.*, 153 B.R. 776 (N.D. Ohio 1993). In that case, cited by neither party, the Chapter 11 debtor requested a declaration that its insurance policies were not executory contracts which could be assumed or rejected by the trustee under § 365 of the Bankruptcy Code. The policies contained retrospective premium clauses which allowed the insurer to adjust the premiums based on claims experience and to require the insured to pay annual retrospective premium adjustments. *Id.* at 777. The policies also contained a bankruptcy clause providing that "the Debtor's insolvency or bankruptcy will not relieve the Insurer of its obligations under the Policy." *Id.*

The Bankruptcy Court held that the debtor's obligation to pay retrospective premiums did not make the policy executory and its failure to make those payments did not relieve the insurer from its obligations:

> The obvious purpose of the Bankruptcy Clause was to make clear that the Debtor's failure to pay retrospective premiums because of the Debtor's bankruptcy or insolvency would not excuse the insurer's payment of claims arising out of occurrences during the policy period.
>
> . . .

11

> **Rejection would confer a windfall on the Insurers and an economic loss on claimants that the Bankruptcy Clauses were designed to avoid.**

*Id.* at 778, 780 (emphasis added).

Finally, Steadfast's reliance on *In re Kismet Prod., Inc.*, Bankruptcy No. 04-25167, 2007 WL 6877250 (N.D. Ohio Aug. 28, 2007), is misplaced. The Court there held that the insured, an employer, was required to pay its medical plan participants' benefits as a condition precedent to being entitled to reimbursement under the insurance policy in question.

*Kismet* is distinguishable in several important respects. First, the policy in question was a *reimbursement* policy, not a liability policy, whose whole purpose and structure was to provide a vehicle for reimbursing the employer for plan benefits it paid to participants in excess of their deductibles. *Id.* at *2. Where the employer had not actually paid the benefits, there was nothing to "reimburse."

Second, the bankruptcy clause in the policy specifically stated that any payments to the trustee or receiver would be made only if the employer had, in fact, paid the benefits to plan participants. *Id.* at *3. Finally, the policy also specifically defined the term "paid" as it related to the plan benefits as payment by check or similar conveyance, which makes

sense given the nature of the policy as a vehicle for reimbursement. *Id.*

Thus, *Kismet* does not support Steadfast's position on the issue before this Court.

For all these reasons, the Court holds that Steadfast is not relieved of its obligation to provide coverage for the judgments obtained by the Sturgills against The Beach, although Steadfast is not be liable for the first $20,000 which represents that two $10,000 per claim SIRs.

Therefore, having reviewed this matter, and being sufficiently advised,

**IT IS ORDERED** that defendant's motion for summary judgment (Doc. 14) be, and is hereby, **DENIED**. Plaintiffs' motion for summary judgment (Doc. 15) be, and is hereby, **GRANTED**. Further, defendant Zurich American Insurance Company is hereby **DISMISSED**. A separate judgment shall enter concurrently herewith.

This 20th day of October, 2015.



Signed By:
William O. Bertelsman WOB
United States District Judge